IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DENISE ANN BEAL,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv00070 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, | ) | |
| Defendant | ) | BY: PAMELA MEADE SARGENT |
| | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Denise Ann Beal, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2011). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

-1-

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Beal protectively filed her applications for DIB and SSI on May 14, 2007, alleging disability as of January 21, 2007, due to asthma, back trouble, panic attacks, female problems, acid reflux and rheumatoid arthritis. (Record, ("R."), at 118-23, 139, 143, 194.) The claims were denied initially and on reconsideration. (R. at 64-66, 70, 71-74.) Beal then requested a hearing before an administrative law judge, ("ALJ"). (R. at 75.) A hearing was held on October 15, 2009, at which Beal was represented by counsel. (R. at 27-59.)

By decision dated December 22, 2009, the ALJ denied Beal's claims. (R. at 13-26.) The ALJ found that Beal met the nondisability insured status requirements of the Act for DIB purposes through June 30, 2011. (R. at 15.) The ALJ also found that Beal had not engaged in substantial gainful activity since January 21, 2007, the alleged onset date. (R. at 15.) The ALJ determined that the medical evidence established that Beal had severe impairments, namely asthma, obesity and degenerative disc disease, but he found that Beal's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15, 18.) The ALJ also found that Beal had the

-2-

residual functional capacity to perform light work[1] that required no more than frequent balancing and occasional kneeling, crouching, stooping, bending and climbing ramps or stairs. (R. at 19.) The ALJ also found that Beal would need to avoid crawling, climbing of ladders, ropes and scaffolds and concentrated exposure to vibrations, hazardous machinery and unprotected heights. (R. at 19.) The ALJ found that Beal was able to perform her past relevant work as a cashier, a hand packager and a maid. (R. at 25.) Thus, the ALJ found that Beal was not under a disability as defined under the Act and was not eligible for benefits. (R. at 26.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2011).

After the ALJ issued his decision, Beal pursued her administrative appeals, (R. at 8), but the Appeals Council denied her request for review. (R. at 1-5.) Beal then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. See 20 C.F.R. §§ 404.981, 416.1481 (2011). The case is before this court on Beal's motion for summary judgment filed April 26, 2011, and the Commissioner's motion for summary judgment filed May 26, 2011.

## II. Facts

Beal was born in 1964, (R. at 118, 121, 139), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a tenth-grade education. (R. at 151.) Beal has past relevant work experience as a hand packager, a cashier and a maid. (R. at 144.)

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2011).

Bonnie Martindale, a vocational expert, was present and testified at Beal's hearing. (R. at 51-58.) Martindale classified Beal's past work as a cashier as light, semi-skilled work. (R. at 52-53.) She classified Beal's past work as a maid and a hand packager as light, unskilled work. (R. at 53.) Martindale was asked to assume a hypothetical individual of Beal's age, education and work experience and who had the residual functional capacity to perform medium work.[2] (R. at 53.) She stated that such an individual could perform all of Beal's past work. (R. at 53.) Martindale was asked to assume the same individual, but who had the residual functional capacity to perform light work that required no more than occasional climbing of ramps and stairs, kneeling, crouching, stooping and bending that did not require her to climb ladders, ropes or scaffolds or to crawl, that allowed her to frequently balance and to avoid concentrated exposure to vibrations, dangerous moving machinery and unprotected heights. (R. at 53-54.) She stated that such an individual could perform Beal's past work as a cashier, a maid and a hand packager. (R. at 54-55.)

Martindale was asked to assume the same individual, but who was limited as indicated by the assessments of G. Elaine Hamilton, F.N.P., and counselor Ralph Orr, L.P.C. (R. at 56, 494-97.) She stated that there would be no jobs available that such an individual could perform. (R. at 56-57.)

In rendering his decision, the ALJ reviewed records from Lee Regional Medical Center; Dr. Robert McGuffin, M.D., a state agency physician; Dr. Shirish

---

[2] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2011).

-4-

Shahane, M.D., a state agency physician; E. Hugh Tenison, Ph.D., a state agency psychiatrist; Louis Perrott, Ph.D., a state agency psychiatrist; Kentucky Orthopedic Clinic; Ralph Ott, L.P.C., a licensed professional counselor; Dr. Clair S. Hixson, M.D.; and Dr. Patrick A. Molony, M.D. Beal's attorney also submitted medical records from Jonesville Rural Health; Dr. Nicanor Concepcion, M.D.; Associated Neurologists of Kingsport; and Lee Regional Medical Center to the Appeals Council.[3]

On January 31, 2007, Beal presented to Frontier Health with complaints of depressive symptoms associated with multiple stressors. (R. at 332.) On February 2, 2007, Beal reported that she was depressed and anxious. (R. at 331.) Her mood was moderately depressed with restricted range of affect. (R. at 331.) Ott completed medical leave papers for three months citing depression as the cause. (R. at 331.) On February 9, 2007, Beal reported that she continued to be stressed. (R. at 330.) She reported frequent panic attacks related to her family situation. (R. at 330.) Ott reported that Beal's mood was moderately depressed with restricted and somewhat anxious demeanor. (R. at 330.) He reported that Beal's attention and thought processes were somewhat obsessive, but otherwise intact. (R. at 330.) On March 14, 2007,[4] Beal reported that she was trying to be more assertive, especially with her son. (R. at 326.) She reported that she was stressed and anxious, but that she was feeling better. (R. at 326.) Her mood was moderately depressed with some

---

[3] Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-5), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

[4] Beal failed to keep her appointments scheduled for February, 15, 19 and 27, 2007. (R. at 327-29.)

moderate amount of anxiety, and her range of affect was restricted. (R. at 326.) On April 6, 2007, Beal reported that her son was acting more mature and was working a job, which took pressure off of her. (R. at 324.) Ott reported that Beal's mood was mild to moderately depressed with restricted range of affect. (R. at 324.) Her attention and thought processes were intact. (R. at 324.) On April 24, 2007, Ott reported that Beal's mood was mildly depressed with restricted range of affect. (R. at 323.) Her thought processes were within normal limits. (R. at 323.) Beal failed to keep her appointment on May 15, 2007. (R. at 322.) There is no evidence that Beal ever returned to see Ott after her April 24, 2007, appointment.

On March 31, 2008, Ott completed a mental assessment indicating that Beal was seriously limited, but not precluded, in her ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 494-95.) He reported that Beal had no useful ability to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out complex or detailed instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 494-95.) On this assessment, Ott stated that he had not seen Beal since April 24, 2007. (R. at 494.)

A May 9, 2007, MRI of Beal's lumbar spine showed degenerative disc disease with midline disc protrusion of the intervertebral space between the L5-S1 level, spinal stenosis at the L5-S1 level and disc protrusion. (R. at 570.) On July 23, 2008, Beal complained of chest pain, shortness of breath, vertigo and nausea.

-6-

(R. at 552-56.) A chest x-ray was normal. (R. at 552, 556.) Myocardial infarction was ruled out. (R. at 552.) On January 29, 2009, x-rays of Beal's lumbar spine and cervical spine were normal. (R. at 541, 544.) An x-ray of Beal's thoracic spine showed nominal spondylosis. (R. at 543-44.) On June 11, 2009, a small bowel study was normal. (R. at 531.) On July 9, 2009, x-rays of Beal's thoracic spine showed minimal spondylosis. (R. at 523-24.) X-rays of Beal's lumbar spine were normal. (R. at 523-24.) Chest x-rays showed no active cardiopulmonary disease. (R. at 524.) A CT scan of Beal's cervical spine was normal, and a CT scan of her head showed focal left maxillary sinus mucosal disease. (R. at 526-27.) On August 10, 2009, a CT scan of Beal's head was normal. (R. at 518-19.)

On July 24, 2007, Dr. Robert McGuffin, M.D., a state agency physician, reported that Beal had the residual functional capacity to perform medium work. (R. at 449-55.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 451-52.)

On July 25, 2007, E. Hugh Tenison, Ph.D., a state agency psychiatrist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Beal suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 456-69.) Tenison reported that Beal had mild limitations on her activities of daily living and in maintaining social functioning. (R. at 466.) He noted that Beal had no difficulties in maintaining concentration, persistence or pace and that she had not had repeated episodes of decompensation. (R. at 466.)

On October 9, 2007, Beal saw Amy L. Jones, a physician's assistant at Kentucky Orthopedic Clinic, for complaints of back pain. (R. at 515.) An MRI

performed in October 2007 of Beal's thoracic spine was normal. (R. at 513-14.) An MRI of Beal's cervical spine showed mild straightening with shallow disc protrusion at the C6-C7 disc space. (R. at 511-12.) On January 11, 2008, Dr. Ronald S. Dubin, M.D., reported that MRI scans were not consistent of anything that would explain Beal's problems. (R. at 509.) On March 18, 2008, Beal complained of persistent neck and back pain and left knee pain and swelling. (R. at 508.) X-rays of Beal's left knee showed minimal degenerative joint space narrowing over the medial joint space and patellofemoral compartment. (R. at 508.) On August 13, 2008, Beal complained of chest pain and dyspnea. (R. at 499-501.) A cardiac exam and an electrocardiogram were normal. (R. at 502.) Dr. Clair S. Hixson, M.D., diagnosed atypical chest pain, ongoing tobacco abuse and dyslipidemia, treated. (R. at 501.)

On February 14, 2008, Louis Perrott, Ph.D., a state agency psychiatrist, completed a PRTF indicating that Beal suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 473-86.) Perrott reported that Beal had mild limitations on her activities of daily living and in maintaining social functioning. (R. at 483.) He noted that Beal had no difficulties in maintaining concentration, persistence or pace and that she had not had repeated episodes of decompensation. (R. at 483.)

On February 14, 2008, Dr. Shirish Shahane, M.D., a state agency physician, reported that Beal had the residual functional capacity to perform medium work. (R. at 487-93.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 489-90.)

On April 29, 2008, G. Elaine Hamilton, F.N.P., a family nurse practitioner for Dr. Patrick A. Molony, M.D., completed a medical assessment indicating that Beal could occasionally lift and carry items weighing up to eight pounds and frequently lift and carry items weighing up to four pounds. (R. at 496-97.) Hamilton reported that Beal could stand and/or walk up to two hours in an eight-hour workday and that she could do so for up to 10 to 15 minutes without interruption. (R. at 496.) She reported that Beal could sit up to five hours in an eight-hour workday and that she could do so for up to one hour without interruption. (R. at 496.) Hamilton reported that Beal could occasionally climb and stoop and never kneel, balance, crouch and crawl. (R. at 497.) Hamilton also reported that Beal's abilities to reach, push and pull were affected by her impairments. (R. at 497.)

On May 13, 2008, Dr. Michael W. Bible, M.D., examined Beal. (R. at 622.) Beal had good muscle strength in her upper and lower extremities. (R. at 622.) Her musculoskeletal examination was normal. (R. at 622.) Beal had good range of motion in her shoulders and wrists, with no pain, swelling, tenderness or deformity. (R. at 622.) She had good range of motion in her hips, and her knees had good stability. (R. at 622.) Dr. Bible reported that Beal had no gross abnormalities or deformities involving the cervical, thoracic or lumbar spine. (R. at 622.) Dr. Bible reported that from a musculoskeletal standpoint, Beal had a completely normal physical examination. (R. at 621.)

Dr. Eileen Sicangco, M.D., treated Beal from January 2009 through August 2009 for various ailments such as bronchitis; dysuria; chronic neck and pack pain; anxiety disorder; abdominal pain; fibromyalgia; chronic pelvic pain; irritable

-9-

bowel syndrome; and overactive bladder. (R. at 573-91.) Dr. Sicangco observed that Beal walked with a normal gait, possessed normal strength and maintained grossly intact cranial nerves. (R. at 574-75, 577-78.)

On October 1, 2009, Dr. Sicangco completed a medical assessment indicating that Beal could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing up to five pounds. (R. at 615-16.) She reported that Beal could stand and/or walk up to two hours in an eight-hour workday and that she could do so for up to 15 minutes without interruption. (R. at 615.) Dr. Sicangco reported that Beal could occasionally climb, stoop, kneel and crawl and never balance. (R. at 616.) Beal's abilities to reach, to feel, to push and to pull were limited. (R. at 616.) Beal was restricted from working around moving machinery, temperature extremes, noise, fumes and vibration. (R. at 616.)

On August 7, 2009, Dr. Nicanor Concepcion, M.D., performed a complex uroflow, a complex cystometrogram and a cystoureteroscopy for correction of a recurrent urinary tract infection and neurogenic bladder. (R. at 631-32.)

On September 21, 2009, Dr. Christopher A. Pendola, M.D., a neurologist, saw Beal for complaints of arm numbness, neck pain and headaches following a motor vehicle accident. (R. at 635-38.) Beal had normal motor power throughout, and her tone was normal. (R. at 637.) Her gait and station were within normal limits. (R. at 637.) Beal's reflexes were symmetric and within physiologic limits. (R. at 637.) She displayed no clubbing, cyanosis or edema in her extremities. (R. at 637.) A nerve conduction study showed a very mild median nerve mononeuropathy at the right wrist. (R. at 639.) Beal had an MRI of the cervical

spine on October 6, 2009, which showed a minor broad-based degenerative disc protrusion at the C4-C5 and C6-C7 disc spaces; loss of normal lordosis; and no evidence of disc extrusion, central canal stenosis cord compression or nerve root compression. (R. at 618-19.) On October 12, 2009, Beal reported that she had not experienced any new neurological signs or symptoms since her last visit. (R. at 656.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2011).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist

-11-

in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2011); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Beal argues that the ALJ erred by failing to give proper weight to the opinions of her treating sources, Drs. Sicangco and Molony, Hamilton and Ott. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief" at 8-13.) Beal also asserts that by not giving her treating sources controlling weight, the ALJ erred by finding that she had the residual functional capacity to perform light work. (Plaintiff's Brief at 13-14.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason

-12-

or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Beal argues that the ALJ erred by rejecting the opinions of her treating sources in determining her physical residual functional capacity. (Plaintiff's Brief at 8-14.) Based on my review of the record, I disagree. The ALJ found that Dr. Sicangco's opinion that Beal had significant work-related limitations to be neither controlling nor persuasive. (R. at 24.) The ALJ noted that Dr. Sicangco's opinion was inconsistent with Beal's conservative treatment and objective test results. (R. at 24.) Dr. Pendola noted that a CT scan of Beal's neck was negative. (R. at 656.) An EMG nerve conduction study of Beal's arms "revealed only mild median nerve compression at the right wrist." (R. at 656.) An MRI of Beal's cervical spine revealed only "minor broad-based disc protrusion at C4-C5, C6-C7, and loss of a normal cervical lordosis" without "disc extraction, canal stenosis, cord compression, nerve root compression or intrinsic cord abnormalities." (R. at 656.)

In addition, the ALJ found that Dr. Sicangco's opinion was inconsistent with the clinical findings of Drs. Bible and Pendola. (R. at 24.) Dr. Bible reported that "I find … Beal to be a healthy white female from a musculoskeletal standpoint." (R. at 621.) Dr. Pendola observed that Beal's motor power was normal throughout; her sensation was intact to light touch, temperature, vibration and graphesthesia; her gait and station were within normal limits and her tandem walk exam was performed normally; her reflexes were symmetric and within physiologic limits;

-13-

Case 2:10-cv-00070-JPJ-PMS   Document 22   Filed 01/03/12   Page 13 of 16   Pageid#: 775

and she displayed no clubbing, cyanosis or edema in her extremities. (R. at 637.) Dr. Bible did not find or diagnosis fibromyalgia.

The ALJ noted that he gave little weight to Hamilton's opinion that Beal was incapable of meeting the demands of an eight-hour workday because it was inconsistent with the clinical findings, imaging studies and Dr. Bible's opinion. (R. at 24.) The ALJ also noted that he was giving little weight to Ott's assessment because it was inconsistent with Beal's activities and limited mental health treatment. (R. at 25, 494-95.) Medical reports from 2010 show that Beal performed activities of daily living without assistance. (R. at 664.) Beal reported that she drove, shopped, prepared her meals daily and handled her finances without difficulty. (R. at 184-85.) On Beal's last visit to Ott on April 24, 2007, he reported that Beal's mood was only mildly depressed, that her attention and thought processes were within normal limits and that she was free of suicidal and homicidal ideation. (R. at 323.) In addition, state agency psychiatrist Tenison found that Beal had only mild limitations on her activities of daily living and in maintaining social functioning. (R. at 466.) He noted that Beal had no difficulties in maintaining concentration, persistence or pace and that she had not had repeated episodes of decompensation. (R. at 466.)

Based on the above, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence in determining that Beal had the residual functional capacity to perform light work.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's weighing of the medical evidence;

2. Substantial evidence exists to support the Commissioner's physical residual functional capacity finding;

3. Substantial evidence exists to support the ALJ's finding that Beal could perform her past work as a cashier, a hand packager and a maid; and

4. Substantial evidence exists to support the Commissioner's finding that Beal was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Beal's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2011):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: January 3, 2012.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE